**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:21-cr-74 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| HUNG AHN HUY PHUNG (1), | : | |
| | : | |
| Defendant. | : | |

**ORDER: (1) GRANTING THE GOVERNMENT'S MOTION FOR RECONSIDERATION; AND (2) ORDERING DEFENDANT'S DETENTION PRETRIAL AND TRANSFER TO OHSD**

This criminal case is before the Court on the Government's motion for reconsideration of the Magistrate Judge's decision to release Defendant Hung Ahn Huy Phung on bond (Doc. 17), as well as Defendant's response in opposition (Doc. 20). The Court also has before it the transcript of Defendant's detention hearing and Defendant's Pretrial Services Report with two addendums.

## I. BACKGROUND

On June 23, 2021, a federal grand jury returned a five-count Indictment, charging Defendant Phung and five co-defendants with various drug trafficking and money laundering offenses. (Doc. 1). Specifically, Defendant Phung is charged as follows: narcotics conspiracy, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count 1); distribution of methamphetamines, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Counts 2 and 3); sale of counterfeit drugs, in violation of 21 U.S.C. §§ 331(i)(3) and 333(b)(8) (Count 4); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 5). (*Id.*)

As charged, Defendant faces a mandatory minimum sentence of 10 years imprisonment up to life on Count 1, a mandatory minimum sentence of five years up to 40 years of imprisonment on Counts 2 and 3, and a statutory maximum term of up to 10 and 20 years imprisonment for Counts 4 and 5 respectively. Based upon Defendant's charged offenses in this case, there is a rebuttable presumption that no bond condition or combination of bond conditions will reasonably assure his appearance in court and the safety of the community. 18 U.S.C. § 3142(e)(3)(A). Additionally, as a non-citizen, Defendant faces potential immigration consequences, including denial of citizenship and possible deportation, if convicted. *See* 8 U.S.C. §§ 1101(a)(43)(B), (G) and 1227(a)(2)(A)(i)(iii), (B)(i).

On June 24, 2021, Defendant was arrested in the Southern District of Texas, where he resides.[1] He was brought before a United States Magistrate Judge of that district and a detention hearing was held on June 29, 2021. At the hearing, the Government moved for pre-trial detention and, after hearing testimony from the Government's investigating agent and arguments from the parties, the Magistrate Judge took the matter under advisement. The following day, the Magistrate Judge ordered that Defendant be released on bond, with standard and special conditions, including, *inter alia*, home incarceration,

---

[1] Defendant's docket in the Southern District of Texas ("SDTX") reflects that all relevant documents were sent to the Southern District of Ohio ("OHSD") on July 8, 2021. *United States v. Phung, et al.*, no. 4:21-mj-1410 (S.D. Tex., Jul. 8, 2021). However, the documents are not filed on the OHSD docket, and the OHSD Clerk's Office has advised this Court that the documents have not yet been received. This Court obtained copies of the relevant documents for purposes of this Order. However, the Court further directs the OHSD Clerk's Office to coordinate with the Clerk's Office in SDTX and ensure that <u>all</u> relevant documents from Defendant's SDTX docket, including the Pretrial Report and both addendums, are transferred and promptly filed on this Court's docket, pursuant to Fed. R. Crim. P. 5(c)(3).

location monitoring, no computer or telephone access, a $500,000 secured bond, and assignment of Defendant's mother and step-father as a third-party custodian. The Government obtained a stay of Defendant's release and filed the instant motion seeking reconsideration of the Magistrate Judge's decision. (Doc. 17).

## II. STANDARD OF REVIEW

Pursuant to 18 U.S.C. § 3142(e)(1), "[i]f, after a [detention] hearing …, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial."

Typically, "[t]he default position of the law … is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). However, if there is probable cause to believe that a defendant has committed an offense in one of several enumerated categories, or if a defendant is indicted for such an offense, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3); *Stone*, 608 F.3d at 945. "The presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id*.

A presumption in favor of detention imposes a "burden of production" on the defendant. *Id*. And although the defendant's burden is not heavy, it can only be satisfied "when he 'com[es] forward with evidence that he does not pose a danger to the

3

community or a risk of flight.'" *Id.* (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). "Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.'" *Id.*

However, the Government at all times maintains the burden of persuasion and therefore must show by clear and convincing evidence that the defendant is a danger to another person or the community, or by a preponderance of the evidence that defendant is a flight risk. *Id.*; *United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *2 (6th Cir. Mar. 18, 2020); 18 U.S.C. § 3142(f)(2)(B).

In determining whether any conditions will reasonably assure a defendant's appearance and the safety of the community, the Court must consider the factors set forth in 18 U.S.C. § 3142(g), including: (1) the nature and circumstances of the alleged offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community if the defendant is released.

Ultimately, if a defendant is ordered released by either a magistrate judge or by a judge of any court that does not have original jurisdiction, "the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order…." 18 U.S.C. § 3145(a)(1). The majority of circuits, as well as most district courts within the Sixth Circuit, hold that the district court reviews a magistrate judge's detention order *de novo*. *United States v. Yamini*, 91 F. Supp. 2d 1125, 1127-29 (S.D. Ohio 2000) (collecting cases).

### III. ANALYSIS

Based upon Defendant's charged offenses in this case, *i.e.*, offenses under the Controlled Substances Act carrying a statutory maximum sentence of 10 years or more, there is a rebuttable presumption that no bond condition or combination of conditions will reasonably assure his appearance in court and the safety of any person or the community. 18 U.S.C. § 3142(e)(3)(A).

In its motion for reconsideration of Defendant's release, the Government argues that Defendant has failed to overcome the presumption of detention and that, if released, Defendant poses a significant flight risk and a danger to the community. (Doc. 17). The Government specifically cites to the seriousness of the instant offenses charged, Defendant's leadership role in the drug trafficking organization, the significant penalties Defendant faces if convicted, his significant financial resources and lack of verifiable income, his non-citizen status, his familiarity with and history of using aliases, and the number and type of firearms Defendant possessed (albeit lawfully) at the time of his arrest. (*Id.*)

Defendant opposes the Government's motion, noting that the Magistrate Judge's stringent bond conditions adequately assure Defendant's appearance and the safety of the community. (Doc. 20). Additionally, Defendant argues that his lack of criminal history and his ties to the community weigh in favor of his release. (*Id.*)

As an initial matter, the Court acknowledges Defendant's lack of criminal history, family support, and his assertions of current lawful employment. But the Court finds such a showing alone to be insufficient for Defendant to overcome the presumption of

detention. In short, Defendant has failed to meet his relatively modest burden of presenting "at least some evidence" to show that he does not pose a danger to the community or a risk of flight. *Stone*, 608 F.3d at 945.

Additionally, the Court will consider, in turn, each of the statutory bond factors *de novo*.

First, the nature and circumstances of the alleged offense are very serious. Defendant is charged with being **the leader** of an incredibly sophisticated, nation-wide drug trafficking organization. And, as the Government's agent testified during the detention hearing, Defendant is alleged to have used intricate means of evading detection, through use of the dark web, a well-developed alias, remote shipment methods, payment by bitcoin, and laundering of funds. Moreover, given the scope of the conspiracy and the quantity of drugs (approximated based on controlled buys and duration of the alleged offense), Defendant is facing a mandatory minimum sentence of 10 years imprisonment on Count 1 alone. (Doc. 1); *see* 21 U.S.C. § 841(b)(1)(A). Such significant penalties coupled with Defendant's apparent sophistication and technological abilities create both strong incentive and means to flee. Accordingly, this factor weighs heavily in favor of detention.

Second, the Court must consider the weight of the evidence. In that regard, "th[e] factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948. The evidence here strongly implicates Defendant's involvement in a large-scale drug trafficking conspiracy, which is in of itself inherently dangerous to the community. Defendant was also found with five firearms in

6

his home and vehicle, one of which was an Uzi submachine gun, as well as loaded magazines. And while Defendant apparently owned the firearms lawfully, the Government indicates that it may elect to supersede the indictment to charge possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c). Accordingly, this factor weighs in favor of detention.

Third, the Court must consider Defendant's history and characteristics. Defendant's lack of criminal history speaks to his credit. Defendant also appears to have ties to the community, including support from his fiancé and his immediate family. Regardless, the Court finds Defendant's family ties to be insufficient. Additionally, due to some remaining areas of ambiguity with regard to Defendant's mother and step-father, the Court cannot conclude that either parent can reliably serve as third-party custodian.[2] Further, despite Defendant's considerable financial resources, he has no history of lawful employment or verifiable income. And while Defendant states that, as of June 2020, he is self-employed with his new food service business, Defendant did not elect to provide

---

[2] The Court would note that Pretrial was initially unable to contact Defendant's mother by way of the telephone number Defendant provided for her. Additionally, the Court finds the question of Defendant's parents' residences somewhat perplexing, given that Defendant's mother and step-father each report owning separate homes, at different addresses, which they allegedly rotate between throughout the year, despite the homes being located roughly four miles apart. Defendant's mother also inaccurately advised Pretrial that she owned one of the two homes in which she and her husband periodically reside, but a records check by the Pretrial Officer revealed that the home was not in Defendant's mother's name at all. Additionally, while Defendant's mother and step-father both reported residing together, Defendant's step-father also stated that he lives in his own home with his son (presumably Defendant's step-brother) and no one else. Defendant's step-brother also has a felony record for tampering with evidence; and Defendant's step-father keeps guns in the homes, which he states are located in a locked safe. Finally, Defendant's mother reported she is a permanent resident of the United States; however, Pretrial's criminal records check revealed an arrest on May 15, 2019 by ICE on the charge of Inadmissible at Entry, though no disposition information was available.

7

any further information to Pretrial for purposes of verification. Defendant also has substance abuse issues—reporting daily marijuana usage. Defendant is also a non-citizen and could face potential immigration consequences, including denial of citizenship or deportation. Defendant was also found to be in possession of a fairly robust alias, with personal identification information. And in that regard, forfeiture of passports does not suffice to alleviate Defendant's risk of flight. On balance, while Defendant's lack of criminal history weighs in his favor, his considerable financial resources (not counting potential access to untraceable e-currency), sophisticated technology usage, ability to obtain false identification information, lack of verifiable income or employment history, marijuana use, and immigration status, all provide enormous incentive to flee. Thus, Defendant's history and characteristics weigh in favor of detention.

As to the fourth factor, the Court cannot find that Defendant necessarily poses a direct risk to individuals in the community *per se*. Defendant lacks any criminal history. The instant alleged offense, while unquestionably dangerous to the community at large, does not qualify a crime of violence. And while Defendant was in possession of a number of firearms at the time of his arrest, the firearms were apparently lawfully owned, have since been removed from the home, and, as of yet, have not been tied to drug trafficking. The Government notes that Defendant's lack of employment indicates a likelihood that Defendant will resort to drug trafficking if released. However, Defendant is presumed innocent of the current charges and he lacks any criminal history indicating repeated drug trafficking activities. Therefore, the Court will not assess this factor by not only assuming Defendant's guilt, but further assuming Defendant's future criminality.

8

Accordingly, despite the dangerousness of the instant alleged offenses, there is a lack of evidence showing that Defendant personally poses a direct risk to the community. Therefore, this factor weighs modestly in Defendant's favor.

### IV. CONCLUSION

Having found that Defendant has failed to overcome the presumption in favor of detention, and having considered all relevant statutory factors, as well as the information contained in the Pretrial Report, and the evidence and arguments of the parties, this Court concludes that no conditions or combination of conditions will suffice to reasonably assure Defendant's appearance, in particular. Defendant simply poses too great a flight risk, which risk is not minimized by any conditions of bond.

Accordingly, the Government motion for reconsideration (Doc. 17) is **GRANTED** and the Magistrate Judge's bond order is **REVOKED**. The U.S. Marshals **SHALL** transport Defendant Phung to the Southern District of Ohio, where Defendant is to remain **DETAINED** pending trial or resolution of this criminal case.

**IT IS SO ORDERED.**

Date: 7/19/2021

*s/ Timothy S. Black*
Timothy S. Black
United States District Judge